CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 02 2014
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| NUVOTRONICS, LLC, | ) |
| | ) Civil Action No. 7:13CV00478 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) By: Hon. Glen E. Conrad |
| LUXTERA, INC., et al., | ) Chief United States District Judge |
| | ) |
| Defendants. | ) |

Nuvotronics, LLC ("Nuvotronics") filed this diversity action for breach of contract and misappropriation of trade secrets against Luxtera, Inc. ("Luxtera") and Molex Incorporated ("Molex"). The defendants have moved to transfer the action to the Southern District of California for the convenience of the parties and witnesses and in the interest of justice, pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the motion will be denied without prejudice.

## Background

The following facts are presented in the light most favorable to Nuvotronics, the nonmoving party.[1] Nuvotronics is a Virginia limited liability company with its principal place of business in Radford, Virginia. The company manufactures micro-scale communications hardware and defense technology. Nuvotronics was created in 2008 through a management buyout of certain assets of Rohm and Haas Electronic Materials, LLC ("RHEM") by Nuvotronics'

---

[1] When reviewing a motion to transfer under § 1404(a), the court may consider evidence outside the pleadings, "but must view all facts in the light most favorable to the party opposing transfer." Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc., No. 09-1036, 2010 U.S. Dist. LEXIS 2941, at *6 (W.D. Pa. Jan. 14, 2010); see also Tharpe v. Lawidjaja, No. 6:12-CV-00039, 2012 U.S. Dist. LEXIS 154464, at *3 (W.D. Va. Oct. 26, 2012) ("[G]iven that Defendant bears a heavy burden in opposing the plaintiff's chosen forum, and the strong presumption in favor of the plaintiff's choice of forum, I will review the facts in the light most favorable to the plaintiff.") (internal citations and quotation marks omitted).

founders and former RHEM employees, David Sherrer and Noel Heiks, along with a small group of Virginia investors. Sherrer is the President of Nuvotronics.

Defendant Luxtera is a Delaware corporation, based in Carlsbad, California, which manufactures electro-optical systems. Defendant Molex is a Delaware corporation, based in Lisle, Illinois, which manufactures electronic interconnectors and other electrical components.

In February of 2007, representatives of RHEM and Luxtera met at a trade show in Anaheim, California. Luxtera was in need of a light source for one of its products. The representatives discussed RHEM's Si-Pak optical packaging technology, and whether it might be modified to suit Luxtera's needs.

In April of 2007, RHEM and Luxtera entered into a written nondisclosure agreement ("NDA") for the purpose of exploring a supplier relationship. Pursuant to the NDA, RHEM and Luxtera agreed to exchange confidential information related to RHEM's Si-Pak optical package technology, including specifications, designs, drawings, testing and manufacturing methods, and samples. The NDA prohibits the recipient of confidential information from disclosing such information to a third party and from using such information for any purpose except those set forth in the NDA. Its terms expire on April 8, 2014.

On June 27, 2007, representatives of RHEM and Luxtera had an initial conference call, during which RHEM provided a detailed description of its Si-Pak technology. The presentation was led by Sherrer from RHEM's facility in Blacksburg, Virginia.

On or about August 10, 2007, representatives of RHEM and Luxtera had another conference call, during which Sherrer presented an engineering and optical design analysis from RHEM's Blacksburg facility. Thereafter, representatives of Luxtera visited RHEM's Blacksburg facility, where they discussed design concepts and a plan for modifying the Si-Pak technology to

meet Luxtera's requirements. The representatives also discussed proposed terms of a service agreement pursuant to which RHEM would make the necessary modifications. During the meeting, RHEM disclosed additional information related to the Si-Pak technology.

On October 22, 2007, RHEM and Luxtera entered into an initial service agreement (the "Phase I NRE"). Pursuant to the Phase I NRE, RHEM agreed to manufacture and deliver 200 experimental optoelectronic pod samples for Luxtera to test and incorporate into its product. The samples were to be manufactured at RHEM's Blacksburg facility.

In the spring of 2008, Sherrer learned that Rohm and Haas ("RAH") was looking to divest its assets associated with RHEM. Sherrer discussed a management buyout option with RAH and RHEM executives, pursuant to which RHEM would sell its assets, relevant intellectual property, and ongoing business. The proposed buyout included the transfer and assignment of the NDA and the Phase I NRE. In July 2008, Sherrer, Heiks, and a small group of Virginia-based investors accomplished the management buyout and formed Nuvotronics.

On August 7, 2008, Luxtera representatives visited Nuvotronics' headquarters, which, at the time, were located in Blacksburg. The purpose of the meeting was to determine specifications for a larger order that were satisfactory to both parties.

On August 22, 2008, Luxtera issued a purchase order for 2,000 parts (the "Phase II NRE"). The parts were manufactured at the Blacksburg facility, and the final shipment was made in December 2008.

In the meantime, Luxtera representatives traveled to Blacksburg on at least two occasions to discuss pricing and procedures for "volume production," which was expected to occur after the NRE orders were complete. (David Sherrer Decl. at ¶ 40.) In October of 2008, Nuvotronics provided a quote for a six-month period of increased production levels. Based on assurances

from Luxtera that a purchase order was forthcoming, Nuvotronics bought the inventory and hired employees necessary to meet the production demands set forth in the quote. However, the companies' relationship ultimately soured, and an agreed-upon purchase order was never issued.

On December 22, 2008, Sherrer flew to California to meet with Luxtera representatives. During the meeting, Sherrer learned that Luxtera was considering pursuing an alternative option for its light source.

On January 2, 2009, Sherrer wrote Greg Young, Luxtera's President and Chief Executive Officer, and advised him that Nuvotronics would have to shut down its Si-Pak line and lay off its employees if the companies were unable to reach a mutually agreeable resolution by January 8, 2009. Sherrer also emphasized "that the Si-Pak Pod is a unique and proprietary technology of Nuvotronics covered by the NDA." (Compl. at 22.) In a response letter dated January 7, 2009, Young advised Sherrer that Luxtera wished to terminate its relationship with Nuvotronics, but that it would continue to satisfy its obligations under the NDA.

Nuvotronics and Luxtera subsequently agreed upon an amount to resolve their existing production dispute. In January 2009, they signed a general release of all claims with exception of those related to the parties' obligations under the NDA and their respective intellectual property rights. Thereafter, Nuvotronics relocated to a smaller facility in Radford, Virginia.

In the instant action, Nuvotronics alleges that, at some point after January 7, 2009, Luxtera reverse-engineered Nuvotronics' Si-Pak technology in violation of the NDA and the Virginia Uniform Trade Secrets Act ("Act"). See Va. Code §§ 59.1-336 to 59.1-343. Nuvotronics further alleges that Luxtera developed, produced, and sold products that utilize Nuvotronics' technology, in violation of the NDA and the Act.

4

On or about January 11, 2011, Molex purchased Luxtera's silicon phototonics-based active optical cable business. Nuvotronics alleges, on information and belief, that Molex acquired all of Luxtera's rights, duties, and interests under the NDA, and that Molex, with the assistance of Luxtera, continued to develop, produce, and sell products that are based upon, incorporate, or utilize Nuvotronics' Si-Pak technology, in violation of the NDA and the Act.

Nuvotronics filed suit against Luxtera and Molex on October 16, 2013. The defendants have moved to transfer venue to the United States District Court for the Southern District of California. The court held a hearing on the motion on February 3, 2014. The motion has been fully briefed and is ripe for review.

## Discussion

The defendants' motion to transfer venue is brought pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This statute "is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (internal citation and quotation marks omitted). In deciding whether to exercise this discretion, courts typically consider a number of factors, including: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." Heinz Kettler GmbH & Co. v. Razor USA, LLC, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010); see also Rockingham Precast, Inc. v. American Infrastructure-Maryland, Inc., No. 5:11cv00024, 2011 U.S. Dist. LEXIS 130885, at *6 (W.D. Va. Nov. 14, 2011) (citing Shire LLC v. Mickle, No. 7:10cv00434, 2011 U.S. Dist. LEXIS 13940 (W.D. Va. Feb. 11, 2011)). The

parties seeking transfer bear the "heavy burden of showing that the balance of interests weighs strongly in [their] favor." Arabian v. Bowen, No. 91-1720, 1992 U.S. App. LEXIS 15624, at *3 (4th Cir. July 7, 1992). For the following reasons, the court concludes that the defendants have not met this burden at this time.

### I. Plaintiff's choice of venue

The first factor in the transfer analysis is the plaintiff's choice of venue. "That choice is typically entitled to 'substantial weight,' especially where the chosen forum is the plaintiff's home forum or bears a substantial relation to the cause of action." Heinz Kettler, 750 F. Supp. 2d at 667; see also Alpharma, Inc. v. Purdue Pharma L.P., 634 F. Supp. 2d 626, 633 (W.D. Va. 2009) ("A plaintiff's choice of forum deserves substantial weight, except when '(1) the plaintiff chooses a foreign forum, and (2) the chosen venue has little connection to the cause of action.'") (quoting Gen. Creation LLC v. LeapFrog Enters., Inc., 192 F. Supp. 2d 503, 504-05 (W.D. Va. 2002)).

In this case, the defendants dispute whether the Western District of Virginia is Nuvotronics' home forum. Although Nuvotronics alleges in its complaint that it is a Virginia limited liability company and that its principal offices are located in Radford, Virginia, the defendants argue that the company's operations have been and are being relocated to Durham, North Carolina. To support this argument, the defendants direct the court's attention to a number of media publications pertaining to Nuvotronics' new manufacturing facility in Durham. According to an article published on April 16, 2013, Noel Heiks told the Triangle Business Journal that she expected to transition Nuvotronics' headquarters to Durham by the end of 2013. (Ex. B to Decl. of Jeffrey A. Ware at 10.) Similarly, in an interview with WRAL TechWire, Heiks indicated that about 30 people would be "mov[ing] from the Radford-Blacksburg[, Virginia] area to the Triangle," including "[herself] and David Sherrer." (Ex. A to Decl. of Jeffrey A. Ware.)

In response, Nuvotronics has submitted a declaration from David Sherrer, the company's President. In the declaration, Sherrer states, under penalty of perjury, as follows:

> Nuvotronics' headquarters is located at 7586 Old Peppers Ferry Loop, Radford, Virginia (the "OPF Facility") and has been since March of 2009. While we do have small design centers in the Los Angeles area (with three employees) and the Boston area (with three employees) and a design/manufacturing facility in Durham, North Carolina, the OPF Facility remains our corporate headquarters and is the only facility where we manufacture our products.
>
> I maintain a residence in both Radford, Virginia and Cary, North Carolina. I maintain a Virginia driver's license and my car is registered in the Commonwealth of Virginia.
>
> Nuvotronics' corporate records are kept at the OPF Facility. The OPF Facility address is the company's primary mailing address. Its DUNS registration, CAGE code and the System for Award Management registration (where all government contractors must register) are all linked with the OPF Facility address.

(Decl. of David Sherrer at ¶¶ 3-5.) Assuming the truth of Sherrer's declaration, the court is constrained to conclude, at this stage of the proceedings, that the Western District of Virginia continues to be Nuvotronics' home forum and, thus, that the company's choice of venue is entitled to "considerable deference." See Leap Frog, 192 F. Supp. 2d at 505; see also Rockingham Precast, Inc., 2011 U.S. Dist. LEXIS 130885, at *9 (holding that the plaintiff's decision to file suit in the Western District of Virginia was entitled to "considerable deference," since the district was the plaintiff's home forum).

In addition to arguing that the Western District of Virginia is no longer Nuvotronics' home forum, the defendants argue that the company's choice to litigate here is entitled to less weight because "there is little to connect the chosen forum with the cause of action." Glamorgan Coal Corp. v. Ratners Grp. PLC, 854 F. Supp. 436, 438 (W.D. Va. 1993). Based on the current record, however, the court is unable to agree. "[W]hile it is certainly true that '[t]he level of deference to a plaintiff's forum choice varies with the significance of the contacts between the venue chosen by

plaintiff and the underlying cause of action,' such contacts are not limited to those only having to do with a defendant's own alleged acts of infringement." Comscore, Inc. v. Integral Ad Science, Inc., 924 F. Supp. 2d 676, 686 (E.D. Va. 2013) (quoting Pragmatus AV, LLC v. Facebook, Inc., 769 F. Supp. 2d 991, 994 (E.D. Va. 2011)). As the defendants recognize in their initial brief, some of the "key issues" that must be resolved in this case are "what disclosures were made during the relevant time period" by Nuvotronics and/or RHEM, and "whether the alleged trade secrets were ever confidential or proprietary." (Br. in Supp. of Mot. to Transfer at 10.) According to David Sherrer's declaration, the Si-Pak technology at issue was developed, modified, and produced at Nuvotronics' facility in Blacksburg, Virginia, and confidential information pertaining to the technology was disclosed during in-person meetings at the Blacksburg facility and presentations conducted via conference call from that facility. Assuming the truth of Sherrer's declaration, there is more than a "little" to connect the Western District of Virginia with the plaintiff's causes of action. Glamorgan, 854 F. Supp. at 438. At a minimum, the described contacts with the Western District of Virginia support the conclusion that the plaintiff's choice of its home forum is "still entitled to deference." Maggard v. Essar Global Ltd., No. 2:12CV00031, 2013 U.S. Dist. LEXIS 26562, at *5 (W.D. Va. Feb. 27, 2013). Accordingly, based on the current record, the court concludes that this factor militates against transferring the case to the Southern District of California.

## II. Convenience of the parties

The second factor in the transfer analysis is the convenience of the parties. "'[W]hen plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify transfer.'" Heinz Kettler, 750 F. Supp. 2d at 668 (quoting JTH Tax, Inc. v. Lee, 482 F. Supp. 2d

731, 738 (E.D. Va. 2007)). Moreover, transfer is not appropriate when it will merely serve to shift the balance of inconvenience from one side to another. Id.

In this case, there is no question that it would be more convenient for Luxtera and Molex to defend this suit in the Southern District of California, since Luxtera's headquarters, operations, and employees are located in Carlsbad, and Molex has a satellite office in Carlsbad and a sales office in San Diego. However, the Southern District of California is not a convenient forum for Nuvotronics to pursue its claims, since its principal place of business and relevant records are currently located in Radford, Virginia. While the defendants may be correct in arguing that more evidence related to their alleged actions is located in California, the court is currently unable to conclude that transferring the case would accomplish more than merely shifting the balance of inconvenience to the plaintiff. See VS Techs., LLC v. Twitter, Inc., No. 2:11CV43, 2011 U.S. Dist. LEXIS 157536, at *23 (E.D. Va. June 28, 2011) ("[I]t is probable that more relevant evidence is and more party witnesses are located in the Northern District of California. However, transfer is inappropriate where it robs a plaintiff of [its] chosen forum and merely shifts the balance of inconvenience from defendant to plaintiff."). Accordingly, this factor does not strongly weigh in favor of transfer.

### III. Witness convenience and access

The third factor, witness convenience and access, is the primary focus of the defendants' motion to transfer. Courts have recognized that this factor is "of considerable importance" in the transfer analysis. Samsung Elecs. Co., Ltd. v. Rambus, Inc., 386 F. Supp. 2d 708, 718 (E.D. Va. 2005). As a general matter, however, "a distinction is drawn between party and non-party witnesses." Id. "'[C]ourts have repeatedly emphasized that in considering whether to transfer a case under 28 U.S.C. § 1404(a), the inconvenience to a party witness is not afforded the same

weight as the inconvenience to non-party witnesses.'" Beacon Wireless Solutions, Inc. v. Garmin Int'l, Inc., No. 5:11cv25, 2011 U.S. Dist. LEXIS 114930, at *14 (W.D. Va. Oct. 25, 2011) (quoting USA Labs, Inc. v. Bio-Engineered Supplements & Nutrition, Inc., No. 1:09CV47, 2009 U.S. Dist. LEXIS 37797, at *11 (E.D. Va. May 14, 2009)). While party witnesses are presumed to be more willing to testify in a different forum, there is no such presumption for non-party witnesses. Samsung, 386 F. Supp. 2d at 718.

In this case, the defendants assert that a number of their non-party witnesses reside in California and that litigating in Virginia will cause great inconvenience to these individuals. The defendants have submitted an affidavit from Greg Young, Luxtera's President and Chief Executive Officer, which states that Young spoke to several of these potential witnesses, and that they indicated that it would be extremely disruptive for them to travel to Virginia. In addition to the burdens of travel, the defendants argue that the geographical distance puts them at a disadvantage because these potential non-party witnesses are not subject to compulsory process in Virginia.

As Nuvotronics emphasizes in its brief in opposition, however, "merely asserting that a witness lives outside the subpoena power of the court is not enough to tip the scales in favor of transfer." Rockingham Precast, 2011 U.S. Dist. LEXIS 130885, at *12. Instead, "the moving party must demonstrate 'whether that witness is willing to travel to a foreign jurisdiction.'" Mullins v. Equifax Info. Servs., LLC, No. 3:05CV888, 2006 U.S. Dist. LEXIS 24650, at *23-24 (E.D. Va. Apr. 28, 2006).

Upon review of the current record, the court is unable to conclude that the defendants have made a sufficient showing in this regard. The declaration from Greg Young does not compel the conclusion that the defendants' potential non-party witnesses would be completely unwilling to

10

travel to Virginia to testify absent a subpoena. Instead, the affidavit indicates that it would be inconvenient for these individuals to travel to Virginia, and that they would prefer to avoid participation in the litigation altogether. See, e.g., Young Reply Decl. at ¶ 4 ("Ted Holtaway . . . *indicated it would be extremely disruptive for him to travel to Virginia and he does not want to travel to Virginia or participate in any trial.*"); Id. at 17 ("Craig Ensley . . . is extremely reluctant to participate in the Virginia action and . . . [would prefer] to keep [his company] out of any legal proceedings."). "Without evidence that these witnesses are unwilling to testify voluntarily, this factor becomes less important." Rockingham Precast, 2011 U.S. Dist. LEXIS 130885, at *13; see also Ashbury Int'l Grp. v. Cadex Defence, Inc., No. 3:11CV00079, 2012 U.S. Dist. LEXIS 134878, at *26 (W.D. Va. Sept. 20, 2012) (holding that this factor did not favor transfer, since the affidavits of defense witnesses "focus[ed] solely on convenience and in no way suggest[ed] that they would be unwilling to travel to Virginia").

The court recognizes that litigating in Virginia will increase the cost and expense of securing witness testimony for the defendants. However, at this stage of the proceedings, it appears that transferring the case would merely shift the cost burdens to Nuvotronics, which has provided its own affidavits from non-party witnesses who claim that they would be inconvenienced if the case was moved to California. In the absence of any evidence that the defendants' non-party witnesses would be unwilling to travel to the Western District of Virginia to testify on their behalf, the court concludes that this factor does not strongly weigh in favor of the defendants.

### IV. <u>Interest of Justice</u>

The final factor in the transfer analysis is the interest of justice, which "encompasses public interest factors aimed at systematic integrity and fairness." Byerson v. Equifax Info. Servs., LLC,

11

467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (internal citation and quotation marks omitted). Relevant considerations include the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of an unfair trial, the ability to join other parties, the possibility of harassment, the pendency of a related action, and the interest in having local controversies decided at home. See Bd. of Trustees v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253, 1260 (E.D. Va. 1988); Heinz Kettler, 750 F. Supp. 2d at 670.

In this case, the defendants concede that a number of the foregoing factors are either "neutral" or "non-determinative." (Br. in Supp. of Mot. to Transfer at 16.) The defendants maintain that the "more pertinent factors here relate to the ability to join parties, fairness of trial, and harassment." (Id.) For the following reasons, however, the court is unable to conclude that these factors tip the scale in favor of transfer at this time.

With respect their ability to join additional parties, the defendants allege that Luxtera "may" want to join Innovative Micro Technology, its replacement vendor, "for indemnification purposes"; that Innovative Micro Technology" may not want or otherwise be able to afford to join in a suit being litigated so far away"; and that this court "may not have jurisdiction over Innovative Micro Technology." (Id. at 16) (emphasis added). As the plaintiff emphasizes in its brief in opposition, however, Innovative Micro Technology was not a party to the nondisclosure agreement at issue, and it is unclear on what basis Luxtera would seek indemnification in relation to the instant action. In the absence of any further explanation or supporting evidence, the court is unable to conclude that this factor weighs in favor of transfer at this time.

The defendants also argue that Nuvotronics has engaged in harassment by filing this action in the Western District of Virginia, and that its decision to file suit in this district undermines the

fairness of the litigation process. The defendants' arguments in this regard are premised on the assertion that Nuvotronics is a "North Carolina-headquartered company" (Id. at 17), and that it has "strategically chosen this forum (rather than its actual home district in North Carolina)." (Reply Br. at 16.) As explained, above, however, the assertion that Nuvotronics is no longer based in this district is refuted by the sworn declaration from David Sherrer, which indicates that the plaintiff is headquartered in Radford, that virtually all of its evidence is housed at its headquarters, and that the alleged trade secrets at issue were developed and disclosed in the Western District of Virginia. Assuming the truth of Sherrer's declaration at this stage of the proceedings, the court is unable to conclude that the plaintiff has attempted to harass the defendants with its choice of venue, or that retaining venue would otherwise undermine the fairness of the litigation process.

Finally, the consideration of having local controversies decided in the home forum does not strongly weigh in favor of transfer. Viewing the record in the light most favorable to Nuvotronics, this dispute involves a Virginia corporation with its principal place of business in Radford. Accordingly, "[t]his is not a case in which the citizens of the Western District of Virginia would be burdened with a controversy that bears no relation to the district." Rockingham Precast, 2011 U.S. Dist. LEXIS 130885, at *22; see also Heinz Kettler, 750 F. Supp. at 670 (emphasizing that "Virginia has an interest in providing a forum for its residents to litigate their disputes").

## Conclusion

For the reasons stated, the court concludes that the defendants have not met their heavy burden of proving that this case should be transferred to the Southern District of California. However, because discovery may reveal evidence that favors the transfer of venue, the defendants' motion will be denied without prejudice.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 1st day of April, 2014.

/s/ Glen Conrad
Chief United States District Judge